**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**


| | | |
|---|---|---|
| Tamara N. Nasrallah, | ) | CASE NO. 1:17 CV 69 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| Vs. | ) | |
| | ) | |
| Lakefront Lines, Inc., | ) | <u>Memorandum of Opinion and Order</u> |
| | ) | |
| Defendant. | ) | |


### INTRODUCTION

This case is before the Court on Defendant Lakefront Lines, Inc.'s Combined Motion for

Summary Judgment and Motion to Dismiss in Response to Plaintiff's Amended Complaint (Doc.

20) and Defendant Lakefront Lines, Inc.'s Motion for Sanctions (Doc. 24). This case arises

under the Fair Labor Standards Act ("FLSA") and the Ohio Minimum Fair Wage Standards Act

("OMFWSA"). For the reasons that follow, Defendant's combined motion is DENIED and its

motion for sanctions is DENIED.

### FACTS

Plaintiff Tamara Nasrallah was employed by Defendant Lakefront Lines as an accounts

payable clerk from January of 2013 to July of 2015. Nasrallah filed a charge of discrimination against Lakefront with the Equal Employment Opportunities Commission, asserting Title VII claims for national origin discrimination and retaliation. On April 26, 2016, the parties executed a Settlement Agreement and General Release regarding Nasrallah's claims. In the Agreement, Nasrallah executed a general release "of and from any claims...and expenses (including attorneys' fees and costs) of any nature whatsoever, whether known or unknown, against [Lakefront] which Nasrallah ever had, now has or asserts or which she...shall or may have or may assert, for any reason whatsoever from the beginning of the world to the date hereof." The release states that it is "unrestricted in any way by the nature of the claim including,...all matters which were asserted or could have been asserted in the Charge, including, but not limited to, matters arising out of Nasrallah's employment with the company, and any other state or federal statutory...claims, including,...all statutory claims under federal [and] state laws regulating employment, including...the Fair Labor Standards Act [and] any and all Ohio Wage and Hour Laws." In exchange for the release, Lakefront agreed to pay Nasrallah $40,000.

In Section 7 of the Agreement, entitled "Acknowledgement [*sic*] of Payment," Nasrallah acknowledged that the $40,000 paid by Lakefront "is the total amount due and owing her." The provision further states that Nasrallah "waives any claims for additional compensation and acknowledges that she has been appropriately compensated for all hours worked," that Lakefront has "paid all sums owed to [her] as a result of her employment with the Company (including all wages)," and that "she is not entitled to anything separate from this Agreement." Finally, this provision states that "Nasrallah hereby waives any and all relief not explicitly provided for herein." In Section 9, entitled "No Action," Nasrallah agreed that "she shall not institute any

further actions, complaints, suits, claims, or grievances in any forum against [Lakefront] with regard to any claims, known or unknown, as of the date of the execution of this Agreement." During the negotiation and execution of the Settlement Agreement, Nasrallah was represented by attorney David M. Benson, the same attorney who represents her in the current matter before this Court. Mr. Benson stated in an April 25, 2016 email to Lakefront that "the settlement agreement is fine. Please send the final draft and we'll sign immediately."

Thereafter, on December 12, 2016, Nasrallah filed suit against Lakefront in the Cuyahoga County Court of Common Pleas, alleging that it had violated the FLSA and OMFWSA by failing to pay her wages she was entitled to as a nonexempt employee. Lakefront timely removed the case to this Court. In this lawsuit, Nasrallah asserts that Lakefront paid her on an hourly basis and that it did not pay her at an overtime rate of one and one-half times her regular rate for all of the hours that she worked. (Nasrallah Dec. ¶ 3). She states that she "was told things such as 'you don't deserve overtime.'" (*Id.* ¶ 4). According to Nasrallah, she worked approximately 50 hours per week, but Lakefront fraudulently altered her timecards to understate the actual hours that she worked. As a result, she claims that she often received incomplete or no pay for her ten hours of overtime per week. (*Id.* ¶¶ 6-7). With respect to the Settlement Agreement, Nasrallah states:

> I signed the Settlement Agreement based on my understanding it was unlawful to compromise my overtime claims *without Department of Labor or court approval* in any manner and that any attempt to do so–including by any "representations" made therein–was legally null and void. Thus, when I entered the Settlement Agreement and made the "representations" therein, I believed my representations about being paid in full and being owed no wages were ONLY representation for purposes of my non-overtime claims (*e.g.,* contract claims for claims for discriminatory pay).

(*Id.* ¶ 9).

Nasrallah amended her complaint on February 28, 2017, to add a claim for retaliation

under FLSA and OMWFSA. She claims that the retaliation occurred through a series of letters

that Lakefront sent to Mr. Benson threatening to sue Nasrallah for breach of the agreement and

to file for Rule 11 sanctions if she did not drop this lawsuit. She also claims that Lakefront

retaliated against her "by filing unfounded Counterclaims for breach of contract and declaratory

judgment."

Lakefront now moves for summary judgment on all of Nasrallah's FLSA and OMWFSA

claims and for dismissal of her retaliation claim. Nasrallah opposes the motion.

## **LAKEFRONT'S SUMMARY JUDGMENT MOTION**

### **I. Summary Judgment Standard**

Rule 56(a) of the Federal Rules of Civil Procedure, as amended on December 1, 2010,

provides in relevant part that:

> A party may move for summary judgment, identifying each claim or defense—or
> the part of each claim or defense—on which summary judgment is sought. The
> court shall grant summary judgment if the movant shows that there is no genuine
> dispute as to any material fact and the movant is entitled to judgment as a matter
> of law.

Fed. R. Civ. P. 56(a).

Rule 56(e) provides in relevant part that "[i]f a party fails to properly support an assertion

of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the

court may ... consider the fact undisputed for purposes of the motion ... [and] grant summary

judgment if the motion and supporting materials—including the facts considered

undisputed-show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

Although Congress amended the summary judgment rule, the "standard for granting

summary judgment remain unchanged" and the amendment "will not affect continuing

development of the decisional law construing and applying" the standard. *See* Fed. R. Civ. P. 56, Committee Notes at 31.

Accordingly, summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The court must afford all reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (citation omitted); *see also United States v. Hodges X-Ray, Inc.,* 759 F.2d 557, 562 (6th Cir. 1985). However, the nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox*, 53 F.3d at 150.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "the mere existence of a

5

scintilla of evidence in support of plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (quoting *Anderson*, 477 U.S. at 52 (1986)). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

## II. <u>Analysis</u>[1]

### A. Waiver

Lakefront argues that it is entitled to summary judgment on Nasrallah's wage claims because Nasrallah, represented by counsel, knowingly and voluntarily entered into the Settlement Agreement, which contained a representation that she was "appropriately compensated for all hours worked" and "paid all sums owed to [her] as a result of her employment with the Company (including all wages)." According to Lakefront, by these statements, Nasrallah "conclusively attested to the fact that her wage and hour claims simply do not exist." It asserts that Nasrallah is attempting to unilaterally repudiate the Agreement by striking Section 7 while keeping the settlement payment and proceeding with the current lawsuit. In support of its argument, Lakefront cites to a number of cases–none of which involved FLSA

---

[1]     Nasrallah has sued under both the FLSA and the OMWFSA. The Ohio statute "expressly incorporates the standards and principles found in the FLSA." *Thomas v. Speedway SuperAmerica, LLC*, 506 F.3d 496, 501 (6th Cir. 2007). As a result, courts have "uniformly held that Ohio's wage and hour law should be interpreted in accordance with the FLSA." *Clark v. Shop24 Glob., LLC*, 77 F. Supp. 3d 660, 687 (S.D. Ohio 2015). The Court will, therefore, evaluate the two claims together.

claims–that stand for the general proposition that a settlement agreement is binding. (*See* Def.'s

Br. at 14-17) (citing, *e.g., Charity v. GMAC Mortg. Invs.*, 2010 WL 3648949 (N.D. Ohio Sept.

14, 2010) ("A plaintiff who knowingly and voluntarily agrees to settle h[er] allegations is bound

by h[er] agreement."); *111 N. Main St., Inc. v. Von Almlen Ents., L.L.C.*, 2013-Ohio-5554, 5

N.E.3d 109, 113 ("A settlement agreement that is voluntarily entered into by the parties is a

binding contract and is subject to enforcement under standard contract law....As such, it cannot

be unilaterally repudiated.").

 In response, Nasrallah argues that Lakefront's motion fails for two reasons: first, there is

a genuine dispute of fact as to whether Nasrallah meant for her representation to be limited to

non-FLSA claims; and second, a FLSA claim cannot be waived or abridged by contract. The

Court need only address Nasrallah's second argument.

 The law is settled that "FLSA rights cannot be abridged by contract or otherwise waived

because this would nullify the purposes of the statute and thwart the legislative policies it was

designed to effectuate." *Craig v. Bridges Bros. Trucking LLC*, 823 F.3d 382, 388 (6th Cir. 2016)

(quoting *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740, 101 S. Ct. 1437

(1981)). The FLSA was enacted to protect workers from substandard wages and oppressive

working hours. *Barrentine*, 450 U.S. at 739. Because there are often great inequalities in

bargaining power between employers and employees, Congress made the FLSA's provisions

mandatory. Thus, they are not subject to negotiation or bargaining between employers and

employees. *Lynn's Food Stores, Inc. v. U.S. Dept. of Labor*, 679 F.2d 1350, 1352 (11th Cir. 1982)

(citing *Brooklyn Savings Bank v. O'Neill*, 324 U.S. 697, 65 S. Ct. 895 (1945)). As a result, many

courts have held that a back wage claim arising under the FLSA can only be settled or

compromised in two ways: supervision by the Department of Labor or a stipulated judgment entered by a court that "has determined that a settlement proposed by an employer and employee[], in a suit brought by the employer under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* at 1355; *see also Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 203 n.4 (2d Cir. 2015) (noting that the Fourth, Seventh, and Eighth Circuits agree with *Lynn* that a waiver of a FLSA claim in a private settlement is invalid).

Of the circuits that have analyzed the issue, the Fifth Circuit has taken perhaps the most liberal view of permitting parties to privately settle FLSA claims. It has excepted from the general prohibition against unsupervised waiver or settlement of FLSA claims those unsupervised settlements that are reached due to a bona fide FLSA dispute over hours worked or compensation owed. *Martin v. Spring Break #83 Productions, LLC*, 68 F.3d 247 (5th Cir. 2012). In *Martin*, the plaintiffs filed a grievance with the union regarding the employer's failure to pay wages for work they had performed. Following an investigation, the union entered into an agreement with the employer settling the disputed compensation for hours worked. Before the settlement was executed, the plaintiffs sued, seeking to recover unpaid wages under the FLSA. The court held that the settlement agreement was binding and barred the FLSA claim. *Id.* at 253-54. In doing so, it noted that the union representative concluded that it would be impossible to validate the number of hours claimed by the workers for unpaid wages. *Id.* at 249. The court reasoned that the settlement was a way to resolve this bona fide dispute as to the number of hours worked. *Id.* at 256.

Several years after *Martin*, the Fifth Circuit again addressed a situation where the parties had entered into a private settlement with a release against future FLSA claims. *Bodle v. TXL*

*Mortg. Corp.*, 788 F.3d 159 (5th Cir. 2015). Unlike in *Martin*, the settlement agreement in *Bodle* resolved a prior state court action that did not involve the FLSA or any claim of unpaid wages but rather a disputed non-compete agreement. The court held that the district court erred in extending *Martin's* limited holding to these circumstances:

> The *Martin* exception does not apply to the instant case because not only did the prior state court action not involve the FLSA, the parties never discussed overtime compensation or the FLSA in their settlement negotiations. Therefore, there was no factual development of the number of unpaid overtime hours nor of compensation due for unpaid overtime. To deem the plaintiffs as having fairly bargained away unmentioned overtime pay based on a settlement that involves a compromise over wages due for commissions and salary would subvert the purposes of the FLSA: namely, in this case, the protection of the right to overtime pay. Under these circumstances where overtime pay was never specifically negotiated, there is no guarantee that the plaintiffs have been or will be compensated for the overtime wages they are allegedly due under the Act.

*Id.* at 165. This absence of any mention or factual development of any claim of unpaid overtime compensation in the state court settlement negotiations precluded a finding that the release resulted from a bona fide dispute over hours worked. Thus, the general prohibition against FLSA waivers applied, and the court refused to enforce the settlement release against the plaintiff's FLSA claims. *Id. See also McConnell v. Applied Performance Techs., Inc.*, 2002 WL 483540, at *5 (S.D. Ohio Mar. 18, 2002) ("Notably, the June 28, 2001 settlement agreement did not arise from a bona fide dispute between McConnell and APT concerning FLSA coverage or the amount of overtime pay owed to him. Instead, it involved the settlement of a loan dispute, overpayment of regular compensation, and counterclaims of constructive discharge, breach of contract, and promissory estoppel. Since the release was not given in settlement of a bona fide dispute between the parties concerning FLSA coverage, it is invalid as a matter of law."); *Hohnke v. U.S.*, 69 Fed. Cl. 170, 180 (Fed. Cl. 2005) (holding that private settlement of non-

FLSA claims could not bar later FLSA claim because it did not involve a bona fide dispute over hours worked or compensation due).

Lakefront does not dispute that FLSA claims are non-waivable or that they cannot be compromised in a private settlement agreement unless supervised by the Secretary of Labor or reviewed and approved by a federal court. Instead, it argues that this case law is only implicated when the settlement agreement at issue involves a compromise of a plaintiff's rights under the FLSA. According to Lakefront, the Settlement Agreement in this case "plainly does not concern a 'compromise' of Plaintiff's rights under the FLSA" because Nasrallah, with the advice of counsel, represented that she was paid for all hours worked. "In other words, [Nasrallah] affirmed that there was nothing to compromise in the first place." (Def.'s Br. at 11).

As an initial matter, Lakefront's argument is belied by the plain and unambiguous language of the Settlement Agreement. Section 7–the provision that Lakefront relies on–is expressly intended to be a "waiver" of any future wage claim that Nasrallah might bring: "Nasrallah understands and agrees that the sum set forth in Section 3 of this Agreement [*i.e.*, the $40,000 that Lakefront paid Nasrallah] is the total amount due and owing her, and by delivery and receipt of such payment, ***Nasrhallah waives any claims for additional compensation... Nasrallah hereby waives any and all relief not explicitly provided for herein.***" Section 2, the general release, also includes an express release against any FLSA and OMWFSA claims that Nasrallah might have. Moreover, Lakefront's argument that the Settlement Agreement did not compromise Nasrallah's wage claims is nonsensical because it is relying on the Agreement in an effort to prevent her from proceeding on her wage claims.

Additionally, Lakefront's interpretation of the case law regarding waiver stands long-

settled principles and the policies behind FLSA on their head. According to Lakefront, a private settlement agreement can preclude a future FLSA claim as long as the underlying dispute did ***not*** involve a FLSA dispute. In other words, the ***only*** time an employee can waive a FLSA claim is when there is ***no*** bona fide dispute over hours worked, and therefore, likely no discussion or negotiation over compensation due. This is precisely the opposite of what the case law holds. As the Fifth Circuit recognized in *Bodle*, such a situation clearly implicates Congress's concerns about unequal bargaining power between an employer and employee and undermines FLSA's goals. Rather, as explained above, even the most liberal interpretation of the ability to privately compromise FLSA claims *only* allows such compromises when they are reached due to a bona fide FLSA dispute over hours worked or compensation owed. As in *Bodle*, in this case, the prior dispute between the parties did not involve the FLSA and there is no evidence that the parties ever discussed overtime compensation or the FLSA in their settlement negotiations. Thus, while the Settlement Agreement contains a general statement that Nasrallah was paid for all hours worked, there was no factual development of the number of unpaid overtime hours nor of compensation due for unpaid overtime. "To deem [Nasrallah] as having fairly bargained away unmentioned overtime pay based on a settlement that involves a compromise over [her Title VII claims] ...would subvert the purposes of the FLSA." *Bodle*, 788 F.3d at 165.

Although Nasrallah was represented by counsel during the negotiation of the Settlement Agreement, this does not change the outcome. "[T]he moving force behind FLSA jurisprudence is not simply that settlements must be knowing and intelligent. Rather, it is a recognition of the unequal bargaining power between individual employees and their employers. The presence of counsel does not redress that imbalance." *Hohnke*, 69 Fed. Cl. at 180; *see also McConnell*, 2002

WL 483540, at *5 (holding that private settlement agreement did not bar employee's later FLSA claim, even where employee was an educated and experienced businessman who was represented by counsel at the time the settlement agreement was executed).

For these reasons, Nasrallah's statements in the Settlement Agreement that she was appropriately compensated for all hours worked and paid all sums owed as a result of her employment with Lakefront are not a bar to her FLSA claim. Lakefront's motion for summary judgment on this basis is denied.[2]

### 2. Estoppel

Next, Lakefront argues that Nasrallah's FLSA claim is barred by the doctrine of equitable estoppel. "Equitable estoppel is applied to transactions where it would be unconscionable to allow a person to maintain a position inconsistent with one in which he or she accepted a benefit. Such estoppel...precludes one who accepts the benefits from repudiating the accompanying or resulting obligation." *Petter Invs., Inc. v. Hydro Eng'g, Inc.*, 828 F. Supp. 2d 924, 930 (W.D. Mich. 2011) (quotations omitted). The elements of an equitable estoppel claim are: 1) conduct or language amounting to a representation of material fact; 2) awareness of the true facts by the party to be estopped; 3) an intention on the part of the party to be estopped that the

---

[2]   Lakefront argues that, unlike a FLSA claim, an employee can validly waive an OMFWSA claim in a settlement agreement. It points out that Ohio law is silent with respect to waivers of state law overtime claims and notes that the Ohio legislature has expressly designated certain other provisions of Ohio's labor statutes as non-waivable by agreement. *See, e.g.,* Ohio Rev. Code § 4113.61; Ohio Rev. Code § 4141.32. The petitioners in *Brooklyn Savings Bank* made the same argument with respect to the FLSA. Even though the petitioners cited other federal statutes that specifically prohibited employees from waiving their rights while the FLSA did not, the Court rejected the argument. It reasoned that the legislative policy behind the FLSA "support[ed] a view prohibiting such waiver." 324 U.S. at 712-13.

representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; 4) unawareness of the true facts by the party asserting the estoppel; and 5) detrimental and justifiable reliance by the party asserting estoppel on the representation. *Bloemker v. Laborers' Local 265 Pension Fund,* 605 F.3d 436, 442 (6th Cir. 2010) (citations omitted).

Lakefront argues that these principles apply here because Nasrallah made a factual representation in Section 7 of the Settlement Agreement that she was paid all wages owed to her. According to Lakefront, based on the allegations in her current complaint, that representation was misleading because she now claims that she was not paid all wages owed to her. Lakefront claims that it acted in good faith reliance on her representation and that the representation induced it into paying her $40,000. It claims that its reliance was detrimental because it would not have entered into the Settlement Agreement absent Nasrallah's representations.

Lakefront's motion is denied. Lakefront has not shown as a matter of law that it justifiably relied on Nasrallah's representation. Lakefront notes that it was "well aware" of the case law prohibiting an employee from waiving a FLSA claim or entering into a private settlement agreement of such a claim. (Def.'s Br. at 10). Yet, in the Settlement Agreement, it sought to do just that by seeking Nasrallah's waiver of any future FLSA or wage claims in exchange for the settlement payment. And now it seeks to hold her to that waiver by claiming that her factual representations in the Settlement Agreement preclude her FLSA claim. To the extent that Lakefront chose to rely on Nasrallah's representations, it did so at its own risk that she could lawfully bring a FLSA claim at some later date. Finally, because the law is clear that a party cannot waive or compromise a FLSA claim through a private settlement agreement,

particularly in the absence of a bona fide dispute over hours worked or overtime owed, this is not a situation where it would be unconscionable to allow Nasrallah to proceed with her wage claims.

For these reasons, Lakefront's motion for summary judgment on Counts One and Two is denied.

## LAKEFRONT'S MOTION TO DISMISS[3]

### I. 12(b)(6) Standard

When considering a motion to dismiss under Rule 12(b)(6), the allegations of the complaint must be taken as true and construed liberally in favor of the plaintiff. *Lawrence v. Chancery Court of Tenn.,* 188 F.3d 687, 691 (6th Cir. 1999). Notice pleading requires only that the defendant be given "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47. However, the complaint must set forth "more than the bare assertion of legal conclusions." *Allard v. Weitzman* (*In Re DeLorean Motor Co.*), 991 F.2d 1236, 1240 (6th Cir. 1993). Legal conclusions and unwarranted factual inferences are not accepted as true, nor are mere conclusions afforded liberal Rule 12(b)(6) review. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 489-490 (6th Cir. 1990).

In addition, a claimant must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569 (2007). A pleading

---

[3]      In its Answer, Lakefront responded to Nasrallah's retaliation allegations without prejudice to its ability to file a motion to dismiss Count III. (Answer at 5 n.3).

that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1955 (2009). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it stops short of the line between possibility and plausibility of "entitlement to relief."

*Id.* at 1949 (citations and quotations omitted).

## II. <u>Analysis</u>

Lakefront moves to dismiss Nasrallah's retaliation claim in Count III. Nasrallah alleges that Lakefront retaliated against her for filing this lawsuit by sending her a "series of letters threatening to sue [her] for breach of an agreement settling discrimination claims, to file for Rule 11 sanctions, and to seek reimbursement, attorney fees and other damages–among other intimidation tactics–if she did not drop the lawsuit." She further alleges that Lakefront retaliated "by filing unfounded Counterclaims for breach of contract and declaratory judgment after Plaintiff presented case law showing that attempts to waive FLSA and OMWFSA claims were void."

"To establish a prima facie case of retaliation, an employee must prove that (1) he or she engaged in a protected activity under the FLSA; (2) his or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action." *Adair v. Charter Cty. of Wayne*, 452 F.3d 482, 489 (6th Cir. 2006). There is no question

that Nasrallah satisfies three of these prongs because she engaged in a FLSA-protected activity by filing this case, she notified Lakefront by serving it with her complaint, and, in response, Lakefront sent her the Rule 11 letters and filed its counterclaims.

Thus, the only question is whether Nasrallah's allegations satisfy the third element. Courts agree that the filing of a lawsuit or counterclaim against a former employee can constitute a "materially adverse action" that "could well dissuade a reasonable worker from making or supporting a FLSA claim." *Cruz v. Don Pancho Market, LLC*, 167 F. Supp. 3d 902, 911 (W.D. Mich. 2016) (citations omitted). While not all counterclaims by employers can be the basis of a retaliation claim, district courts in the Sixth Circuit generally agree that counterclaims that are not brought in good faith but instead are motivated by retaliation, can be a basis for a claim of retaliation. *Carr v. TransCanada USA Servs. Inc.*, 2014 WL 6977651, at *2-3 (M.D. Tenn. Dec. 8, 2014); *Outback Steakhouse*, 75 F. Supp. 2d 756, 758 (N.D. Ohio 1999) (explaining that courts in other jurisdictions have also found that "the filing of lawsuits, not in good faith and instead motivated by retaliation, can be a basis for a claim under Title VII").

Here, Nasrallah's allegations are sufficient to satisfy the materially adverse action element. Nasrallah claims that Lakefront's letters threatening Rule 11 sanctions were "intimidation tactics." It is certainly plausible that a letter threatening drastic relief, including attorney's fees, was sent with the purpose of dissuading Nasrallah from pursuing her claims. In addition, Nasrallah alleges that Lakefront pursued its "unfounded" counterclaims even after she provided it with case law showing that a wage claim cannot be waived. Despite being "well aware" of this case law, Lakefront filed its breach of contract and declaratory judgment counterclaims. Again, it is plausible Lakefront acted in bad faith by deciding to pursue these

claims despite its knowledge of the law.

For these reasons, Lakefront's motion to dismiss Count III is denied.

**<u>CONCLUSION</u>**

For the foregoing reasons, Lakefront's Combined Motion for Summary Judgment and Motion to Dismiss in Response to Plaintiff's Amended Complaint (Doc. 20) is DENIED. Its motion for sanctions is DENIED because attorney Benson's conduct in bringing this case "was reasonable under the circumstances." *Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 384 (6th Cir. 1997).

IT IS SO ORDERED.


 /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 5/25/17